# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **HERBERT LATHAM, JR.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 7:23-cv-1281-ACA** |
| } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| **COMMISSIONER,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Herbert Latham, Jr., *pro se*, appeals the Social Security Commissioner's denial of his claim for disability insurance benefits and supplemental security income. (Doc. 1). Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision. The court **WILL DENY AS MOOT** Mr. Latham's request for appointment of counsel. (Doc. 19).

I.  **PROCEDURAL HISTORY**

In January 2021, Mr. Latham applied for disability insurance benefits and supplemental security income alleging that his disability began on December 17, 2019. (*See* doc. 6-6 at 2–3, 9–10). The Social Security Administration denied

Mr. Latham's application initially and on reconsideration, and he requested review by an administrative law judge ("ALJ"). (Doc. 6-5 at 5–13, 16–24). After a hearing (doc. 6-3 at 30–60), the ALJ issued an unfavorable decision (*id.* at 10–18). Mr. Latham filed an untimely request for review of the decision, but the Appeals Council found good reason for the delay, considered Mr. Latham's disagreements with the decision, and found no basis to change the ALJ's decision. (*Id*. at 2–5).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard of review, the court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). The court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

### III. EVIDENCE AND ALJ'S DECISIONS

The court begins by describing the evidence submitted to the ALJ, followed by the ALJ's decision.

In December 2018, Mr. Latham went to the emergency department for his back pain. (Doc. 6-11 at 49). An X-ray of his lower back showed a normal alignment of his vertebral bodies, normal spacing of his discs, no abnormalities, and no fractures. (*Id.* at 54). The doctor's impression was of an "[u]nremakarkable lumbar

3

spine." (*Id.*). Mr. Latham was diagnosed with lumbar pain and sciatica of the right side, given pain medications, and provided with the contact information for a follow-up provider. (*Id.* at 52).

In January 2020, Mr. Latham was seen by a nurse practitioner for back pain, the severity of which he described as a 10/10. (Doc. 6-10 at 19–23). The nurse prescribed two nonsteroidal anti-inflammatory drugs ("NSAIDs") to assist in pain management. (*Id.* at 22). Four months later, Mr. Latham went back to the emergency department for back and knee pain. (Doc. 6-11 at 41). He reported that he had chronic lower back pain near his left hip and had aggravated it when he lifted a refrigerator. (*Id.*). After looking at X-rays of Mr. Latham's knee and hip, the physician did not identify any fractures, dislocations or abnormalities. (*Id.* at 44). The physician's clinical impression was a left knee strain, a lumbar strain, and hip joint pain. (*Id.* at 45). The next month, Mr. Latham returned to the emergency department for his back pain, but imaging taken during that visit revealed no injuries to his back, and the physician noted no red flags for a more serious course of back pain. (Doc. 6-9 at 146–47). Mr. Latham was given pain medication and released. (*Id.* at 147).

In April 2021, Mr. Latham went to the emergency room because he was experiencing knee pain after a recent fall. (Doc. 6-12 at 9). Imaging from that visit revealed no evidence of a fracture. (*Id.* at 16). The physician identified a left knee

sprain as his primary impression and prehypertension as his secondary impression. (*Id.* at 14). The emergency physician gave Mr. Latham an NSAID to manage the pain and discharged him with a referral to see a different doctor. (*Id.*).

In July of 2021, Mr. Latham returned to the emergency department for his back pain, reporting that he woke up in pain after sleeping on a couch. (Doc. 6-14 at 37). The provider offered a clinical impression of "bilateral thoracic back pain, unspecified chronicity." (*Id.* at 42). The provider administered dexamethasone and an NSAID but did not order any imaging or issue any prescriptions for Mr. Latham's back pain. (*See id.* at 37–42).

At a hearing before the ALJ, Mr. Latham testified that on September 1, 2022, a car hit him from behind while he was walking, fracturing his left knee and "behind," injuring his shoulders, neck, and head, and requiring surgery. (Doc. 6-3 at 35, 46–48). Mr. Latham did not have medical records of this incident at that time, but the ALJ kept the record open for forty-five days so that Mr. Latham could supplement the record. (*Id.* at 35). Mr. Latham did not submit any additional records or information. (*Id.* at 13).

The ALJ found that Mr. Latham had not engaged in any substantial gainful activity since his alleged onset date of December 17, 2019. (*Id.* at 12). The ALJ determined that Mr. Latham's obesity and left knee osteoarthrosis were severe impairments, but while the ALJ considered Mr. Latham's lumbar strains,

5

hypertension, and gout, he found that they were non-severe impairments. (Doc. 6-3 at 13). For Mr. Latham's lumbar strains, the ALJ relied on the imaging that showed "no red flags for more serious back pain," and medical evidence indicating that he had maintained a full range of motion and a normal gait. (*Id*.). Finally, the ALJ found that Mr. Latham's knee and shoulder injuries from the September 2022 accident were not medically determinable because Mr. Latham had not submitted any medical records corroborating them. (*Id.*). The ALJ concluded that Mr. Latham did not have any impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

Upon consideration of the entire record including the evidence of knee and back pain, the ALJ determined that Mr. Latham possessed the residual functional capacity to perform a medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with some exertional, postural, and environmental limitations. (Doc. 6-3 at 14). Based on this residual functional capacity and testimony from a vocational expert, the ALJ found that Mr. Latham was unable to perform his past relevant work but that other jobs exist in significant numbers in the national economy that Mr. Latham can perform, including dietary aide, hand packager, and box maker. (*Id.* at 17–18). Accordingly, the ALJ determined that Mr. Latham was not disabled, as defined by the Social Security Act, from December 17, 2019 through January 17, 2023. (*Id.* at 18).

## IV. DISCUSSION

Construed liberally, Mr. Latham contends that (1) the Appeals Council erred by denying review on the ground that his request was untimely; and (2) substantial evidence does not support the ALJ's decision because his back and knee pain interfere with his ability to work and take care of himself. (Doc. 1 at 3–4; docs. 12, 16).

First, the Appeals Council did not deny review on the ground that Mr. Latham's request was untimely. (*See* doc. 6-3 at 2). Instead, it found good reason for Mr. Latham's delay, considered the reasons Mr. Latham disagreed with the ALJ's decision, and determined that the reasons "do not provide a basis for changing the [ALJ]'s decision." (*Id.*). Accordingly, the Appeals Council could not have erred in rejecting his appeal as untimely.

Second, Mr. Latham argues that his continued lower back pain was exacerbated by a car accident in September 2022 and is a qualifying disability. (Doc. 1 at 4; doc. 12). The court construes this to be an argument that the ALJ erred by not properly considering Mr. Latham's testimony about his level of pain.

Under Eleventh Circuit precedent, a claimant may establish disability through testimony of pain or other subjective symptoms by showing evidence of an underlying medical condition and either (1) "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or (2) "that the

7

objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). But an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Here, the Commissioner argues that substantial evidence supported the ALJ's decision to discredit Mr. Latham's statements about the "intensity, persistence, and functionally limiting effects" of his pain. (Doc. 15 at 8–11).

"[W]hen a claimant's subjective complaints are inconsistent with medical and other evidence, an ALJ may discredit the claimant's statements." *Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1316 (11th Cir. 2024). But if a claimant "testifies as to his subjective complaints of disabling pain, . . .the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant' allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quotation marks omitted). The ALJ need not make "an explicit finding as to credibility, [but] . . . the implication must be obvious to the reviewing court." *Id.* The credibility determination must be sufficient to enable the court "to conclude that [the ALJ] considered [the claimant's]

medical condition as a whole." *Id.* (first alteration in original) (quotation marks omitted).

Here, the ALJ discredited Mr. Latham's statements about disabling pain because they were "not entirely consistent with the medical evidence and other evidence in the record." (Doc. 6-3 at 13–15). To make this determination, the ALJ correctly identified and summarized each of the previous incidences when Mr. Latham was treated for back and knee pain. (*Id.* at 13–16). The ALJ also considered the frequency with which Mr. Latham sought care for his back pain as well as the lack of ongoing or regular treatment for pain and found that Mr. Latham's complaints were "intermittent and sporadic." (*Id.* at 16). And the ALJ found that the record did not support his testimony because physician notes recorded "no red flags" and imaging did not reveal any abnormalities. (*Id.* at 13, 16). This analysis is sufficient to support the ALJ's credibility finding, which is "a matter generally within the ALJ's province." *Rodriguez*, 118 F.4th at 1316. In making these findings, ALJ clearly stated "explicit and adequate" reasons for discrediting the testimony,

and these reasons are supported by substantial evidence. *See Dyer*, 395 F.3d at 1210–11. Accordingly, the court **AFFIRMS** the ALJ's decision.

## V. CONCLUSION

The court **WILL AFFIRM** the Commissioner's final decision and **WILL DENY** Mr. Latham's request for the appointment of counsel **AS MOOT**.

**DONE** and **ORDERED** this March 31, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE